**IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
TALLAHASSEE DIVISION**

**L.R.[1],**

     **Plaintiff,**

**vs.**                                              **Case No.: 4:19-cv-00349-WS-MAF**

**LEON COUNTY SCHOOL BOARD,
et al.,**

     **Defendants.**

_____/

## REPORT AND RECOMMENDATION

This Cause comes before the Court upon Defendants' Motion to Dismiss filed pursuant to Fed. R. Civ. P. 12(b)(6). ECF No. 9. Plaintiff, L.R., initiated this case seeking relief pursuant to 42 U.S.C. § 1983 and the Americans with Disabilities Act (ADA). ECF No. 1, p. 3-4. Plaintiff is the mother of a minor child, "K," who she claims is eligible for special education for his writing disability and who, at the time of the filing of the complaint,

_____

[1] The Court granted Plaintiff leave to proceed under a pseudonym, "L.R.". ECF No. 6. The pseudonym "K" is used to identify the minor child.

attended Leon County Schools.[2] ECF No. 1. L.R. is seeking unspecified[3] damages against Defendants, Leon County School Board (LCS); James Hanna; the superintendent, T. Alan Cox, an assistant superintendent and Section 504[4] Officer; and Kathleen Rodgers, an assistant superintendent and equity officer. Id. Plaintiff alleges Defendants violated the Individuals with Disabilities Act (IDEA), the Americans with Disabilities Act (ADA), and her constitutional rights to free speech under the First Amendment and Due Process under the Fourteenth Amendment. Id.

After careful review, for the reasons stated below, the Defendants' Motion to Dismiss, ECF No. 9, should be granted and the instant case dismissed.

## I.   Allegations of the Complaint, ECF No. 1

Generally, Plaintiff alleges that Defendants' "relentless attacks" against her and her son, K, a seventh grader, and their refusal to put forth "any good

---

[2] The Court takes judicial notice of its own records in a similar case filed by Plaintiff in Case No. 4:19-cv-00137. In Plaintiff's response to defendants' motion for summary judgment, Plaintiff admits that she and her son moved to North Carolina. Case No. 4:19-cv-00137, ECF No. 38, p. 3. *See* Fed. R. Evid. 201(b), (c).

[3] Plaintiff asserts the amount in controversy exceeds $75,000. ECF No. 1, p. 4.

[4] "Section 504(a) of the Rehabilitation Act of 1973, 87 Stat. 355, 29 U.S.C. § 791 et seq. (Act or Rehabilitation Act), prohibits, among other things, discrimination on the basis of disability 'under any program or activity conducted by any Executive agency.' 29 U.S.C. § 794(a) (1988 ed., Supp. V)." Lane v. Pena, 518 U.S. 187, 189 (1996).

faith attempt to resolve the issues" has resulted in forcing the family to leave Florida. ECF No. 1, pp. 2, 8. Plaintiff's complaint is no model of clarity and covers a period of six years (2014 – 2019). At times, she appears to conflate her claims and injuries with that of her son. See ECF No. 1, generally. She varies back and forth between more recent events and those that occurred when K was a fourth grader. Accordingly, Plaintiff's allegations are best outlined in this Report in chronological order.

*1. 2014*

Plaintiff's alleges the "conflict" between the parties began in September 2014, when Plaintiff sought an "evaluation of K" while he attended private school but LCS "dismissed" her. ECF No. 1, p. 9. Plaintiff does not identify the need for this "evaluation," nor does she explain the "dismissal." Id.

*2. 2015*

Five months later, in January 2015, Plaintiff enrolled K in public school and sought an evaluation of K for a suspected writing disability. Id. She claims that she asked LCS to implement K's Section 504 accommodation plan from a public school in California. Id. She alleges LCS forced her into signing paperwork designating K as autistic under threats to remove K from class if she did not comply. Id., p. 10. According to Plaintiff, LCS did not evaluate K for a writing disorder but only for autism, ignored her input, and

ignored K's California evaluations. Id. Plaintiff alleges that LCS "manipulate[d] score sheets and purposefully [used]" outdated statutes to qualify K as autistic. Id., p. 10. Plaintiff broadly alleges that LCS has a practice of denying services to dyslexic individuals and those with dysgraphia and "used the autism designation to stigmatize [K], undermine his confidence, [and] remove him from educational opportunities." Id. Plaintiff claims this upset her and "resulted in the family likely seeking other educational opportunities." Id. She also generally alleges that, during fourth grade, K "was subjected to intrusive, stigmatizing and humiliating actions"; and they took away his writing services after she filed a complaint with the Florida Department of Education (FDE). Id., p. 14. Plaintiff provides no factual support for this allegation.

Plaintiff alleges that she was "banned" from K's school because she complained his psychological evaluation was left unsecured on parent orientation night. Id., p. 18. However, the redacted email exhibits upon which Plaintiff relies, dated October 26, 2015, indicates the school informed her she could not "visit campus unsupervised by an administrator until [they] were on the same page about [her] removing [school] files without permission." Id., pp. 51-56.

*3. 2016*

The following year, in May 2016, the FDE ordered LCS to evaluate K for a writing disability, which Plaintiff maintains was the result of her FDE complaint. Id., p. 11. Plaintiff alleges that LCS conducted "the evaluation in January 2017" and vaguely claims it did so "after much delay and obstruction." Id. She does not say how or when the "delay"[s] or "obstruction[s]" occurred. Plaintiff alleges that LCS refused to identify K as having dyslexia and refused to design a writing program for him. Id. Plaintiff alleges Cathy Shields (not named in this lawsuit) assisted Defendant Cox in conducting a "falsified evaluation," violated standardized testing protocols, and "falsified a parent interview," but provides no factual support for these allegations. Id., pp. 11-12. She alleges Shields "told K's teachers that he could write but just chose not to." Id., p. 12. Plaintiff alleges K was "harshly" and "severely" disciplined though she provides no factual support for this allegation either. Id., pp. 18-19. She maintains her request for a hearing was denied. Id., p. 20. She gives no details of the alleged request or denial and does not state the purpose of the alleged hearing.

Plaintiff claims, in August 2016, she filed a complaint with the U.S. Department of Education Office of Civil Rights alleging violations of the ADA, Section 504 violations, and retaliation but the school again dismissed her

and rejected her requests for an individualized education program meeting (IEP). Id., p. 20. According to Plaintiff, on August 26, 2016, Defendant Rodgers instructed the principal to de-enroll K; and Cox obstructed and delayed an IEP. Id., p. 21. In the fall, Cox also delayed K's enrollment, prevented re-enrollment, and berated Plaintiff for not sending her child to school. Id. Again, Plaintiff provides no facts to support her allegations of their dismissal of her, the obstructions and delays, or how she was berated or when any of these incidents occurred.

*4. 2017*

In May 2017, Plaintiff claims that she had K tested privately by Dr. Jennifer Bickell, a licensed clinical psychologist, who determined K has a form of dyslexia known as dysgraphia. Id., p. 12. She claims that Shields and the school psychologist, Robert Grandal, dismissed the diagnosis; and Grandal opined that K did not have a writing disability. Plaintiff claims this is the reason K failed in school. Id., p. 13. Plaintiff blames this "wrong label" for "K becoming functionally illiterate" and "caus[ing] great emotional distress for the family." Id., p. 14. She broadly alleges that K was "frustrated and discouraged by staff members' negative and critical approach to instruction." Id. Plaintiff does not provide any factual detail for this allegation. She does state that one intervention "consisted of playing Candyland with non-verbal

children" and an online math curriculum, in which he excelled. Id., p. 15. Plaintiff accuses an unnamed teacher of falsified K's writing samples but does not explain how and does not identify the writing samples. Id.

Plaintiff alleges, in April 2017, Cox "retaliate[ed]" against her by sending her a "letter telling [her] that her right to participate in her son's IEP was denied because she filed a due process complaint" and, eventually, "[held] an IEP meeting without [her] permission or participation." Id., pp. 21-22.

Plaintiff claims that in the summer of 2017, she was granted a "Due Process" hearing, which was "The First IDEA Administrative Hearing 2017." Id., p. 22. She claims the teachers "perjured themselves regarding the creation of written records" because the "records were created or manipulated" for LCS's 'defense,'" "to attack K" and to "falsely portray him as . . . disturbed and violent." Id. She claims Cox made "misrepresentations under oath" and "testified" Plaintiff was "crazy." Id., p. 23. Plaintiff claims the school board attorney criticized her, sent her insulting emails, and made her feel inadequate in representing K. Id., p. 24. She provides no facts to support these allegations.

Plaintiff claims that in October 2017 after showing Defendant Hanna "samples of the personal student data," K was suspended and threatened

with arrest. Id., p. 25. She claims Hanna sent her "a hostile and intimidating email" warning her "not to characterize his staff as bad or evil" and chastised her for the taxpayer expense involved in litigating her claims. Id., p. 25-26.

*5. 2018*

In May 2018, Plaintiff claims she submitted a "letter to the HR Director" about the incidents and the impact on the family. Id., p. 29. The director did not reply; so, Plaintiff asked to have the letter forwarded to the Board and the school board's attorney. Id. However, no one responded. Id.

In August 2018, Plaintiff claims she attended a resolution meeting related to the second Due Process meeting. Id. She alleges that LCS became more "aggressive" with her afterward because she brought a friend to the resolution meeting with her; and the friend spoke on K's behalf. Id., p. 30. Plaintiff does not provide factual support for her allegations of "aggressive[ness]" by LCS.

In September 2018, Plaintiff claims LCS made no efforts to update K's program, which was not working, and wanted him to fail because the goal was to get him to leave school. Id., p. 17. Plaintiff alleges this forced her to provide K with a tutor at their own expense; and the tutoring schedule required her to leave her job. Id. She claims around the same time, Julie Lawson (not named in this suit) retaliated against her by defaming her by

calling her "crazy" in front of her son. Id., p. 30. Plaintiff claims the stress forced her to seek treatment at an emergency room because she had stroke symptoms. Id. She claims that Lawson then targeted K and "subjected him to public humiliation and shaming." Id., p. 31. Plaintiff provides no facts for this allegation.

### 6. 2019

In April 2019, Plaintiff alleges Cox "made public comments to a media outlet about this matter" and mischaracterized Plaintiff. Id. In May 2019, Shields "attempted to block K's services" and "directed staff to hold an IEP meeting without [Plaintiff's] knowledge." Id., p. 32. Again, Plaintiff provides no supporting facts.

### 7. Plaintiff's Claims to Rights of Action

Given these allegations, Plaintiff asserts she has a cause of action under the ADA because Cox declared under oath that Plaintiff was "crazy." Id., p. 32, 42-43. Plaintiff admits that she does not have any disability and was never diagnosed with any "mental condition." Id., p. 32. Rather, Plaintiff seems to assert that because Cox created a perception that she has a disability, then she is protected under the ADA. Id., p. 42. She also believes that she is protected under the ADA because Defendants retaliated against

her, interfered with her efforts, and intimidated her because she aided a person with a disability, namely, K. Id., p. 43.

In addition, Plaintiff raises the following "Counts" against Defendants:

**Count 1** - Plaintiff claims that Defendants violated her right to free speech and to be free from retaliation as protected under the First Amendment when it forced her to sign and ratify that her son was autistic in order for him to be allowed to attend school, defamed her, denied her right to participate, de-enrolled K because Plaintiff filed "a complaint with "OCR," and sent her intimidating emails. Id., p. 33-35.

**Count 2** - Plaintiff claims that all Defendants denied Plaintiff's right to Due Process and her right to participate in her child's education when she was "banned" from going to K's school. Id., p. 36.

**Count 3** - Plaintiff claims LCS as engaged in a practice of ignoring Board policies and laws and engaged in unwritten practices of denying disability categories for its students, particularly, those with dyslexia. Id., p. 38.

**Count 4** - Plaintiff claims that Defendants negligently hired and promoted Shields because Shields actively denied Plaintiff's rights and participated in falsifying K's educational records. Id., p. 39.

**Count 5** - Plaintiff claims that Defendants Cox and LCS denied her constitutional right to privacy by not protecting K's educational records by discussing the matter with members of the community and the media. Id., p. 40.

Plaintiff claims, as a result, she has suffered emotional distress, physical injury, loss of her personal and business reputation, humiliation, embarrassment, loss of self-esteem. Id., pp. 35, 37, 39, 40-41. She seeks an unspecified amount of damages and does not seek any injunctive relief. Id., p. 41, 43.

## II.  Standard of Review

The issue on whether a complaint should be dismissed pursuant to Fed. R. Civ. P. 12(b)(6) for failing to state a claim upon which relief can be granted is whether the plaintiff has alleged enough plausible facts to support the claim stated. Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662 (2009) (quoting Twombly, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678 (citing Twombly,

550 U.S. at 556; see also Wilborn v. Jones, 761 F. App'x 908, 910 (11th Cir. 2019). "The plausibility standard" is not the same as a "probability requirement," and "asks for more than a sheer possibility that a defendant has acted unlawfully." Iqbal, 556 U.S. at 677 (quoting Twombly, 550 U.S. at 556). A complaint that "pleads facts that are 'merely consistent with' a defendant's liability," falls "short of the line between possibility and plausibility." Iqbal, 556 U.S. at 678 (quoting Twombly, 550 U.S. at 557).

The pleading standard is not heightened, but flexible, in line with Fed. R. Civ. P. 8 to simply give fair notice to the defendant of the plaintiff's claim and the grounds upon which it rests. Swierkiewicz v. Sorema, 534 U.S. 506 (2002) ("Rule 8(a)'s simplified pleading standard applies to all civil actions, with limited exceptions."). *Pro se* complaints are held to less stringent standards than those drafted by an attorney. Wright v. Newsome, 795 F.2d 964, 967 (11th Cir. 1986) (citing Haines v. Kerner, 404 U.S. 519, 520-21 (1972)). Nevertheless, a complaint must provide sufficient notice of the claim and the grounds upon which it rests so that a "largely groundless claim" does not proceed through discovery and "take up the time of a number of other people." Dura Pharmaceuticals, Inc. v. Broudo, 544 U.S. 336 (2005) (quoted in Twombly, 550 U.S. at 558).

One additional principle warrants highlighting: a motion to dismiss does not test the truth of a complaint's factual allegations. As noted above, factual allegations, though not legal conclusions, must be "accepted as true," Ashcroft, 556 U.S. at 678 even when they are "doubtful in fact." Twombly, 550 U.S. at 555. "Instead, it remains true, after Twombly and Iqbal as before, that 'federal courts and litigants must rely on summary judgment and control of discovery to weed out unmeritorious claims sooner rather than later.'" Leatherman v. Tarrant Cty. Narcotics Intelligence & Coordination Unit, 507 U.S. 163, 168-69 (1993) (quoted in Yawn v. Sec'y of Dep't of Corr., No. 5:13cv228-RH/EMT, 2017 U.S. Dist. LEXIS 96642, 2017 WL 2691423, at *1 (N.D. Fla. June 21, 2017)).

## III.  Defendants' Motion to Dismiss, ECF No. 9

Defendants raise the following defenses in their motion to dismiss. ECF No. 9.

1. Dismissal is warranted because Plaintiff failed to perfect service of the complaint where it was served more than ninety days after the filing. Id., p. 7-8.

2. The four-year statute of limitations bars any claims for instances that occurred prior to July 30, 2015. Id., p. 8.

3. The official capacity claims are due to be dismissed as duplicative because Defendants are also sued in their individual capacities and because LCS is named as a defendant. Id., p. 8-10.

4. The claims against LCS should be dismissed because Plaintiff fails to allege a "policy, custom, or practice" that caused the deprivation. Id., p. 10-14.

5. Plaintiff fails to state a claim under Section 1983 for a violation of her First Amendment right to free speech. Id., p. 14-16. According to Defendants, Plaintiff was not banned from her son's school because of her speech but because she violated school policy and removed records from a teacher's desk. Id., p. 15-16.

6. Plaintiff fails to state a Due Process claim because her right to participate in her child's education, namely the IDEA process, is not a constitutionally protected right. Defendants assert Plaintiff was granted an IDEA administrative hearing, which she concedes. Id., p. 16-17.

7. Plaintiff fails to state a negligent hiring claim because she does not allege Defendants "disregarded a known or obvious consequence of hiring the applicant." Id., p. 17-18.

8. Plaintiff fails to state a cognizable privacy interest that was impacted. According to Defendants, this claim is one recognized under the Family Educational Rights and Privacy Act (FERPA), which prohibits the release of education records to unauthorized persons, but there is no private right of action pursuant to Section 1983. Id., p. 19.

9. Defendants Rodgers, Cox, and Hanna are entitled to qualified immunity. Id., p. 20-25.

10. The ADA claim should be dismissed because there is no credible allegation that Plaintiff is disabled; and the complaint fails to allege she was discriminated against because she was advocating for her son. Id., p. 25-26. Moreover, the ADA does not recognize individual liability; therefore, the counts against the employee defendants should be dismissed. Id., p. 26.

## IV.    Plaintiff's Response, ECF No. 15

Plaintiff maintains her complaint was properly served upon the Defendants in accordance with the Court's order. ECF No. 15, p. 4. She claims that Defendants are not entitled to qualified immunity because their actions "shook the conscience." Id., pp. 4-5. She largely reiterates her claims made in her complaint. Id., pp. 6-12.

## V.    Discussion

### A. Plaintiff Properly Served the Defendants with the Complaint,

Defendants assert that Plaintiff's complaint should be dismissed for failure to properly serve them within the ninety-day time frame set forth in Fed. R. Civ. P. 4(m). Rule 4(m) sets the time limit for service and provides, in part: "if a defendant is not served within 90 days after the complaint is filed, the court – on motion or on its own after notice to the plaintiff – must dismiss the action without prejudice against that defendant or order that service be made within a specified time."

Plaintiff is correct. When the Clerk of Court issued summonses on August 13, 2019, the Court ordered Plaintiff to serve Defendants with the complaint no later than November 12, 2019. ECF No. 6. Defendants concede they were served with the complaint on November 5, 2019. ECF No. 9, p. 8. Therefore, given that the Court ordered "service be made within a specified

time," Plaintiff effected proper service upon Defendants. Accordingly, the Court addresses the merits of Plaintiff's complaint below.

B. Plaintiff's Complaint Amounts to an Impermissible Shotgun Pleading

The Court liberally construes Plaintiff's claims as set forth above in Section I. See Haines v. Kerner, 404 U.S. 519, 520-21 (1971). However, this leniency does not permit her to file an impermissible "shotgun" pleading. The Eleventh Circuit has identified four categories of shotgun pleadings. See Weiland v. Palm Beach Cty. Sheriff's Office, 792 F.3d 1313, 1321-23 (11th Cir. 2015) (citations omitted). The most common type is one which "contain[s] multiple counts where each count adopts the allegations of all preceding counts, causing each successive count to carry all that came before and the last count to be a combination of the entire complaint." Id. Another common type is a complaint that is "replete with conclusory, vague, and immaterial facts not obviously connected to any particular cause of action." Id. A third type of shotgun pleading does not separate into a different count each cause of action or claim for relief. Id. Finally, although relatively rare, is the shotgun pleading that asserts multiple claims against multiple defendants without specifying which of the defendants are responsible for which acts or omissions or which of the defendants the claim is brought against. Id. "The unifying characteristic of all types of shotgun pleadings is

that they fail to one degree or another, and in one way or another, to give the defendants adequate notice of the claims against them and the grounds upon which each claim rests." Id.

Plaintiff's complaint is a combination of the first two types of shotgun pleadings. Overall, the complaint is replete with legal conclusions and unsupported allegations. Even though district courts must liberally construe *pro se* pleadings, they are not required to rewrite complaints to create a viable cause of action where one does not otherwise exist. GJR Invs. v. County of Escambia, 132 F.3d 1359, 1369 (11th Cir. 1998) ("[I]n the case of *pro se* litigants [the] leniency [afforded] does not give a court license to serve as de facto counsel for a party or to rewrite an otherwise deficient pleading in order to sustain an action[.]").

Here, Plaintiff does not provide sufficient facts to support a violation of her First Amendment or Due Process rights. She alleges her First Amendment Rights were violated when she was "banned" from the school for filing a complaint; yet, this is controverted by her own exhibits. She was only restricted from visiting the school unaccompanied by an administrator because she took school records. Plaintiff's "Exhibit B" is an email from the principal dated October 26, 2015, at 11:10 a.m.: "I have not received the document that you agreed to return from Ms. Bottini's files…Have you

returned the document that you removed from Ms. Bottini's files?. . . I will be happy to allow you back on campus as a visitor once this document i[s] returned." ECF No. 1, p. 52. Plaintiff's "Exhibit F," is an email from the principal from the same day, less than an hour later: "At this time, I must revoke your ability to visit campus unsupervised by an administrator until we are on the same page about removing teacher/student files without permission." Id., p. 56.

Similarly, Plaintiff's assertions contradict her vague Due Process claim – she participated in IEP meetings and due process hearings. Lastly, Plaintiff seeks to recover damages caused by Defendants for emotional distress: however, she alleges no facts to support this claim under Florida tort law. "[B]efore a plaintiff can recover damages for emotional distress caused by the negligence of another, the emotional distress suffered must flow from physical injuries the plaintiff sustained in an impact." Whitehurst v. Wal-mart, 306 F. App'x 446 (11th Cir. 2008). See Kayfetz v. A.M. Best Roofing, Inc., 832 So.2d 784, 786 (Fla. 3d DCA 2002). She alleges no "impact" causing an injury. Although ordinarily, a plaintiff is entitled to amend her complaint, it is, nonetheless, futile for Plaintiff to do so for the reasons set forth below.

C. Plaintiff's IDEA Claims, Defamation Claims, and ADA Claims Are Not Properly the Subject of a Section 1983 Action

*1. The IDEA Claims*

Plaintiff's claims under IDEA are the subject of two earlier complaints she filed in this Court. <u>See</u> Case Nos. 4:18-cv-00072-MW-MAF and 4:19-cv-137-MW-MAF. Still, IDEA claims may not serve as the basis of a § 1983 action. This is because "Section 1983 merely secures the federally protected rights a plaintiff already holds. It does not expand those rights . . . Section 1983 did not provide a right to damages where none existed before." <u>L.M.P. ex rel E.P. v. Sch. Bd.</u>, 516 F. Supp. 2d 1305 (S.D. Fla. 2007). <u>See</u> <u>also</u> <u>Bradley ex rel. Bradley v. Ark. Dep't of Educ.</u>, 301 F.3d 952, 957 (8th Cir. 2002) (plaintiffs could not recover damages against state officials in their individual capacities under Section 1983 when damages are unavailable under the IDEA); <u>Sch. Bd. Of Manatee Cty., Fla. v. L.H.</u>, 666 F. Supp. 2d 1285, 1297 (M.D. Fla. 2009), report and recommendation adopted Case No. 8:08-cv-1435-T-33MAP (plaintiffs failed to state a claim where they only alleged IDEA violations as the basis for their § 1983 claim).

Accordingly, to the extent Plaintiff seeks to have any IDEA claims serve as the basis for this § 1983 action, the claims require dismissal as not cognizable or as otherwise duplicative of Case Nos. 4:18-cv-00072 and 4:19-cv-137-MW-MAF.

## 2. The ADA Claims

Plaintiff alleges discrimination under the ADA because Cox declared at the hearing that Plaintiff was "crazy." ECF No. 1, p. 32, 42-43. Plaintiff admits she does not have any disability or any "mental condition." Id., p. 32. Plaintiff raises two assertions: (1) Cox created a perception Plaintiff has a disability so she is covered by the ADA and (2) the Defendants retaliated against her with intimidation because she aided her son who has a disability. Id., pp. 42-43. Plaintiff fails to detail the facts supporting her intimidation allegation.

In order to state a claim under the ADA, a plaintiff must allege (1) that he or she suffers from a disability, (2) is a qualified individual, and (3) that a "covered entity" discriminated against him on account of his disability. Cramer v. Florida, 117 F.3d 1258 (11th Cir. 1997) (citing Holbrook v. City of Alpharetta, 112 F.3d 1522, 1526 (11th Cir. 1997). Plaintiff fails to state a claim because she denies she is a "qualified individual" – she does not have a disability.

It is also worth noting that, "a plaintiff may not maintain a §1983 action in lieu of-or in addition to-a Rehabilitation Act or ADA cause of action if the only alleged deprivation is of the [individual's] rights created by the Rehabilitation Act and the ADA." Holbrook v. City of Alpharetta, Ga., 112

F.3d at 1531. Thus, the Eleventh Circuit has held that the comprehensive remedial framework of the ADA forecloses an action under § 1983 based solely on rights created by the ADA. Id. Accordingly, Plaintiff's ADA claims are not properly raised in this action and warrant dismissal.

### 3. The Harassment and Defamation Claims

Plaintiff's attempts to sue Cox and Hanna for defamation necessarily fail. Claims of harassment, embarrassment, and defamation are not cognizable under Section 1983. Edwards v. Gilbert, 867 F.2d 1271, 1274 n.1 (11th Cir. 1989) (noting that verbal taunts, alone, are insufficient to state a constitutional violation); Hernandez v. Florida Dep't of Corr., 281 F. App'x 862, 866 (11th Cir. 2008) (holding that plaintiff's allegations of verbal abuse and threats by prison officials did not state a constitutional claim because the defendants never carried out the threats, and "verbal abuse alone is insufficient to state a constitutional claim").

Plaintiff's claim that Cox defamed her when he testified at a hearing that she was "crazy," at the most, amounts to embarrassment or a verbal taunt. ECF No. 1, p. 23. She provides no other factual account that would implicate these claims otherwise. Therefore, these claims should be dismissed.

D. Plaintiff, a Non-Lawyer, May Not Represent Her Minor Child

The Eleventh Circuit has never permitted a non-attorney parent to act *pro se* on behalf of their child. FuQua v. Massey, 615 F. App'x 611, 612 (11th Cir. 2015) ("The right to appear pro se . . . is limited to parties conducting 'their own cases,' and does not extend to non-attorney parties representing the interests of others. Consequently, we have held that "parents who are not attorneys may not bring a pro se action on their child's behalf.'" (quoting Devine v. Indian River Cty. Sch. Bd., 121 F.3d 576, 581 (11th Cir. 1997), overruled in part on other grounds by Winkelman ex rel. Winkelman v. Parma City Sch. Dist., 550 U.S. 516, 535 (2007). A non-attorney parent "has no right to represent a child in an action in the child's name." Whitehurst v. Wal-Mart, 306 F. App'x 446, 449 (11th Cir. 2008).

Therefore, to the extent Plaintiff seeks to represent K in this proceeding to pursue any claims of discrimination, harassment, constitutional violations, or de-enrollment, she is prohibited from representing him in this proceeding. Accordingly, the case, as involving K, warrants dismissal.

E. Claims for Incidents Occurring Prior to July 30, 2015, are Barred by the Statute of Limitations.

Defendants assert that Plaintiff's claims for events that took place more than four years ago are barred by the statute of limitations. ECF No. 9, p. 8. The statute of limitations for filing a Section 1983 action in Florida is four

years. <u>Chappell v. Rich</u>, 340 F.3d 1279, 1283 (11th Cir. 2003). The limitations period begins to run when the plaintiff "know[s], or should know (1) that they have suffered the injury that forms the basis of their complaint and (2) who has inflicted the injury." <u>Id</u>.

Plaintiff filed the instant action on July 30, 2019. ECF No. 1. Accordingly, any claims against Defendants for acts or omissions which occurred prior to July 30, 2015, would be barred by the statute of limitations. In her complaint, Plaintiff claims that in September 2014, the LCS failed to evaluate her son while he was attending private school. ECF No. 1, p. 9. She also claims that, in January 2015, LCS somehow forced her to sign an acknowledgment that K was autistic or otherwise improperly stigmatized K, ignored his California assessments, punished K, and de-enrolled him from special services as a result of Plaintiff's FDE complaint. <u>Id</u>., 9-10, 14. Because those events occurred before July 30, 2015, the claims are time-barred and warrant dismissal.

F.  <u>The Official Capacity Claims and Claims that LCS's "Policy, Custom, or Practice" Caused a Constitutional Violation Warrant Dismissal.</u>

The Defendants seek dismissal of the official capacity claims because they are duplicative of the claims against the municipality under <u>Busby v. City of Orlando</u>, 931 F.2d 764, 776 (11th Cir. 1991). ECF No. 8-9. To the extent that Plaintiff's claims against the Defendant school board members in their

official capacity are the same as the ones she raises against the school board, they are duplicative. The Defendants, LCS and individual members of the school board, make the suit effectively an action against the state entity. The Eleventh Circuit explained:

> Personal-capacity suits seek to impose personal liability upon a government official for actions he takes under color of state law. Official-capacity suits, in contrast, generally represent only another way of pleading an action against an entity of which an officer is an agent. As long as the government entity receives notice and an opportunity to respond, an official-capacity suit is, in all respects other than name, to be treated as a suit against the entity. It is not a suit against the official personally, for the real party in interest is the entity.

Cook v. Sheriff of Monroe Cty, 402 F.3d 1092, 1115 (11th Cir. 2005) (quoting Kentucky v. Graham, 473 U.S. 159, 165-66 (1985).

As to the school board's liability, "a plaintiff seeking to establish a school board's liability under § 1983 must "identify a [school board] 'policy' or 'custom' that caused [his or her] injury." Grech v. Clayton Cty., Ga., 335 F.3d 1326, 1330 n. 6 (11th Cir. 2003); see also Hoefling v. City of Miami, 811 F.3d 1271, 1279 (11th Cir. 2016). "It is when execution of a [county's] policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the [constitutional] injury that the [county] as an entity is responsible under § 1983." Monell v. Dep't of Soc. Servs., 436 U.S. 658, 694 (1978).

There are three theories under which a municipality can be liable for an official policy:

> [(1)] acts which the municipality has officially sanctioned or ordered . . . [(2)] if final policymakers have acquiesced in a longstanding practice that constitutes the entity's standard operating procedure . . . [a]nd [(3)] . . . on the basis of ratification when a subordinate public official makes an unconstitutional decision and when that decision is then adopted by someone who does have final policymaking authority.

Id. (internal citations and quotations omitted).

Here, as Defendants surmise, Plaintiff alleges that the school board violated her First Amendment rights to free speech by "forcing" her to sign paperwork designating K as autistic, engaged in a pattern of retaliation to include defamation, denied her right to participate in her son's education, de-enrolled her son, "banned" her from the school for reporting a violation, ignored or failed to follow school board policies and laws, and punished her for bringing her IDEA claims. ECF No. 9, p. 10. But nowhere does Plaintiff allege any supporting facts of an official policy or longstanding practice that would demonstrate this is the school board's standard operating procedure. Plaintiff fails to cite any policy or law that the school board is ignoring. ECF No. 1. Moreover, as previously discussed, Plaintiff's complaint amounts to legal conclusions and unsupported allegations. Id.

Finally, as to the constitutional claims, although neither party is challenging the Court's subject matter jurisdiction, this Court may conduct a review of its jurisdiction *sua sponte*. See Wisconsin Dep't of Corrections v. Schacht, 524 U.S. 381, 389 (1998). Florida's sovereign immunity extends to its agencies, subdivisions, or officers. See Alabama v. Pugh, 438 U.S. 781, 782 (1978); Fitzgerald v. McDaniel, 833 F.2d 1516 (11th Cir. 1987). That "bar exists whether the relief sought is legal or equitable." Papasan v. Allain, 478 U.S. 265, 276 (1986). Naming a government official in his official capacity is the equivalent of naming the governmental entity itself. See Kentucky v. Graham, 473 U.S. 159, 169 (1985). A state official, however, may be sued in his official capacity when the suit alleges a constitutional violation by the official, acting in his official capacity and seeks only prospective injunctive relief. See Grizzle v. Kemp, 634 F.3d 1314, 1319 (11th Cir. 2011).

The Eleventh Amendment to the United States Constitution grants States and entities acting as an "'arm of the State'" immunity from suits brought by private citizens in federal court. Powell v. Barrett, 496 F.3d 1288, 1304 (11th Cir. 2007) (quotations omitted); U.S. Const. Amend XI. In determining whether a defendant acts as an "arm of the State," the Court examines four factors: "(1) how [S]tate law defines the entity; (2) what degree of control the State maintains over the entity; (3) where the entity derives its

funds; and (4) who is responsible for judgments against the entity." Id. at 1304.

Here, "school boards constitute branches of local government and thus may be subject to liability under *Monell*." Denno ex rel. Denno v. School Bd., 218 F.3d 1267, 1276, n.9 (11th Cir. 2000) (citation omitted). It then follows that the individual Defendants sued in their official capacities are also "arms of the State." The Defendants are protected under Eleventh Amendment Immunity because Plaintiff does not seek any injunctive relief in this case but only an unspecified amount of damages. ECF No. 1. Accordingly, the official capacity claims and the claims alleging the school board had a "policy, custom, or practice" that violated Plaintiff's constitutional rights should be dismissed.

### G. Plaintiff's Individual Capacity Claims against Board Member Defendants Warrant Dismissal Based on Qualified Immunity

Each Board member Defendant raises a qualified immunity defense. ECF No. 20-25. Dismissal based on qualified immunity is proper "when the complaint fails to allege the violation of a clearly established constitutional right." St. George v. Pinellas Cty., 285 F.3d 1334, 1337 (11th Cir. 2002) (citing Chesser v. Sparks, 248 F.3d 1117, 1121 (11th Cir. 2001). While the Court is required to accept the allegations in the complaint as true, once a defendant raises a qualified immunity defense, the burden of persuasion

belongs to the Plaintiff. Id. The Court is not required to accept legal conclusions as true.

For the reasons stated, Plaintiff's complaint fails to state any constitutional violations against any Defendant. Therefore, the Board member Defendants are entitled to qualified immunity. Id.

### H. Negligent Hiring Under Florida State Tort Law

Plaintiff claims LCS was negligent in hiring or promoting Cathy Shields. ECF No. 1, p. 39. Negligent hiring claims may be raised within a Section 1983 action:

> To impose § 1983 liability based on a hiring decision, a plaintiff must demonstrate that the municipal actor disregarded a known or obvious consequence of hiring the applicant. It is not sufficient under this standard that a municipal actor's inadequate screening of an applicant's record reflects an "indifference" to the applicant's background. Rather, a plaintiff must demonstrate that the municipal hiring decision reflects deliberate indifference to the risk that a violation of a particular constitutional or statutory right will follow the decision.

Griffin v. City of Opa-Locka, 261 F.3d 1295, 1313 (11th Cir. 2001) (citations omitted).

In her complaint, Plaintiff alleges vaguely that Shields somehow assisted Defendant Cox in conducting a "falsified evaluation," violated standardized testing protocols, "falsified a parent interview"; yet, nonetheless, Shields was "promoted continuously." ECF No. 1, pp. 11-12,

39. Plaintiff presents no facts that illustrate when or how Shields accomplished any of these alleged acts. Conclusions are not good enough to sustain a cause of action. See Twombly, 550 U.S. at 555. Plaintiff alleged no facts to support a finding that LCS failed to conduct an adequate pre-hire investigation of Shields, that LCS knew or should have known that Shields was unfit for her positions, that the LCS later became aware or should have become aware of Shields' unfitness but failed to take action, or that the LCS failed to train or supervise Shields. Moreover, "[t]o succeed on a negligent hiring or retention claim, the plaintiff must demonstrate, among other things, that the employee committed an underlying willful tort." Taffe v. Wengert, 775 F. App'x 459 (11th Cir. 2019) (citing Magill v. Bartlett Towing, Inc., 35 So. 3d 1017, 1020 (Fla. 5th DCA 2010)). Because Plaintiff has not done so, this claim cannot succeed. See also Iqbal, 556 U.S. at 678.

This Court is not unsympathetic to Plaintiff's position and understands that parents of children with disabilities face incredible challenges, often with limited resources. Unfortunately, as a matter of law, Plaintiff's claims are legally insufficient to warrant relief in this forum.

## VI.   Conclusion and Recommendation

It is respectfully RECOMMENDED that Defendant's Motion to Dismiss for failure to state a claim, ECF No. 9, be GRANTED; that Plaintiff's request for unspecified damages be DENIED; and the case be DISMISSED.

IN CHAMBERS at Tallahassee, Florida, on August 27, 2020.

**/s/ Martin A. Fitzpatrick**
**MARTIN A. FITZPATRICK**
**UNITED STATES MAGISTRATE JUDGE**


## NOTICE TO THE PARTIES

Within fourteen (14) days after being served with a copy of this Report and Recommendation, a party may serve and file specific written objections to these proposed findings and recommendations. Fed. R. Civ. P. 72(b)(2). A copy of the objections shall be served upon all other parties. A party may respond to another party's objections within fourteen (14) days after being served with a copy thereof. Fed. R. Civ. P. 72(b)(2). Any different deadline that may appear on the electronic docket is for the Court's internal use only and does not control. If a party fails to object to the Magistrate Judge's findings or recommendations as to any particular claim or issue contained in this Report and Recommendation, that party waives the right to challenge on appeal the District Court's order based on the unobjected-to factual and legal conclusions. *See* 11th Cir. Rule 3-1; 28 U.S.C. § 636(b)(1)(C).